UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANIEL J. GULLIVER,

     Petitioner,

v.           Case No. 3:10-cv-251-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

     Respondents.

_____

**<u>ORDER</u>**

**<u>I. Status</u>**

Petitioner Daniel J. Gulliver, who is represented by counsel,[1] initiated this action by filing a <u>pro se</u> Petition for Writ of Habeas Corpus (Petition) (Doc. #1), Memorandum of Law (Doc. #2) and exhibits (P. Ex.) under 28 U.S.C. § 2254 on March 18, 2010. Gulliver challenges a 2007 state court (Duval County, Florida) judgment of conviction for driving under the influence (DUI) manslaughter. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Respondents' Response to Petition for Habeas Corpus (Response) (Doc. #17) with exhibits (Resp. Ex.). Gulliver, through counsel, submitted a brief in reply on December 30, 2010. <u>See</u> Petitioner's Reply Memorandum of Law and Renewed Request for Evidentiary Hearing (Reply) (Doc. #23). This case is ripe for review.

_____

[1] <u>See</u> Notice of Appearance (Doc. #19), filed September 15, 2010.

## II. Procedural History

On March 8, 2007, the State of Florida charged Gulliver with two counts of DUI manslaughter. Resp. Ex. B, Amended Information. That same day, Gulliver entered a plea of guilty to both counts. Id., Plea of Guilty and Negotiated Sentence; Resp. Ex. G, Transcript of the Plea Proceeding (Plea Tr.). The trial court, on April 5, 2007, adjudicated Gulliver guilty of both counts and sentenced him to a term of fifteen years of imprisonment on count one and a term of five years of imprisonment on count two, to run consecutively to the term imposed for count one, followed by ten years of probation. Resp. Ex. C, Judgment.

On or about February 21, 2008, Gulliver filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. F at 12-58. He filed an amended motion (Rule 3.850 motion) and memorandum of law on November 12, 2008. Id. at 108-34, 135-200. In his request for post conviction relief, Gulliver asserted that counsel (Henry Matson Coxe, III, and Michael Dennis Whalen) were ineffective because they failed to: raise the defense that the victim driver was the sole and proximate cause of the accident (ground one); move to suppress the blood test results (ground three); ensure that the court complied with Florida Rules of Criminal Procedure 3.210 and 3.212 in determining that he was mentally competent to enter the guilty plea (ground five); conduct an adequate pretrial investigation, present substantial mitigating

2

evidence, interview key witnesses with favorable testimony, and move to suppress the blood test results (ground seven); and object to the prosecutor's improper "message to the community" argument at sentencing (ground ten). Additionally, Gulliver asserted that defense counsel were ineffective because they delivered a plea agreement that was facially harmful and conceded his guilt without Gulliver's consent (ground eight), and created a conflict of interest when Mr. Coxe had lunch with State Attorney Shorstein, continued his friendship with Shorstein, and accepted a letter provided by Shorstein that had been written by Mr. Shaw, the victim driver's father, accusing Shorstein of agreeing to Gulliver's plea deal to obtain Coxe's support for Shorstein's potential judgeship (ground nine).

Gulliver also asserted the following claims: that the State did not adequately investigate; he is entitled to a judgment of acquittal due to the State's insufficient evidence; he was denied the right to confront the witnesses against him and to call his own witnesses; and the State destroyed the vehicles so that his expert could not challenge the State's findings, thus constituting a Brady[2] violation; and the Florida Highway Patrol (FHP) report conflicts with other evidence (ground two); Gulliver's guilty plea was involuntarily entered due to the State's deprivation of his prescribed psychotropic medication and replacement with the wrong

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

3

psychotropic medication (ground four); Gulliver's guilty plea was involuntarily entered because he did not understand the plea, as noted during his December 20, 2006 visit with Dr. Miller, and defense counsel made no attempt to correct Gulliver's misunderstanding until thirty minutes prior to the March 7, 2007 plea (ground six); and the cumulative impact of defense counsels' deficiencies resulted in the denial of a competent defense (ground eleven).   On February 5, 2009, the trial court denied the Rule 3.850 motion.   Resp. Ex. G at 219-22.   On appeal, Gulliver filed a pro se brief.   Resp. Ex. H.   The State filed a notice that it would not file an answer brief.   Resp. Ex. I. On June 11, 2009, the appellate court affirmed the trial court's decision per curiam. Gulliver v. State, 13 So.3d 59 (Fla. 1st DCA 2009); Resp. Ex. J. The court subsequently denied his motion for rehearing on July 28, 2009, see Resp. Exs. K; L, and the mandate issued on August 13, 2009, see Resp. Ex. L.

On July 8, 2009, Gulliver filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), see Resp. Ex. M at 1-10; the State filed a response, see id. at 11; and Gulliver replied, see id. at 12-18.   The trial court denied Gulliver's motion, see id. at 19-25, as well as his motion for rehearing, see id. at 26-29, 30.   Gulliver appealed, filing a pro se brief.   Resp. Ex. N.   The State filed a notice that it would not file an answer brief.   Resp. Ex. O.   On December 29, 2009, the

appellate court affirmed the trial court's decision per curiam. Gulliver v. State, 27 So.3d 663 (Fla. 1st DCA 2009); Resp. Ex. P. The court denied Gulliver's motion for rehearing on February 4, 2010, see Resp. Exs. Q; R, and the mandate issued on February 22, 2010, see Resp. Ex. S-1.

While the Rule 3.800 motion was pending, Gulliver sought to pursue a belated appeal. Resp. Ex. T, Petition for Writ of Habeas Corpus Belated Appeal. On February 3, 2010, the appellate court denied the petition per curiam. Gulliver v. State, 29 So.3d 1154 (Fla. 1st DCA 2010); Resp. Ex. U. The court also denied his motion for rehearing on March 17, 2010. Resp. Exs. V; W. No mandate was issued.[3]

On June 4, 2010, the Florida Supreme Court denied Gulliver's petition for writ of habeas corpus as procedurally barred stating, that "[a] petition for extraordinary relief is not a second appeal and cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings." Gulliver v. McNeil, 42 So.3d 690 (Fla. 2010) (citations omitted). The court denied Petitioner's motion for rehearing on August 10, 2010. Id.

---

[3] Online docket, Daniel James Gulliver v. State of Florida, Case No. 1D10-77, website for the First District Court of Appeal (http://www.1dca.org).

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 3-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Gulliver's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120

S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de</u> <u>novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

7

findings] by clear and convincing evidence."[4]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.
denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Gulliver's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust

_____

4 "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

Recently, the United States Supreme Court discussed the doctrine of procedural default:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, e.g., <u>Coleman</u>,[5] <u>supra</u>, at 747-748, 111 S.Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain circumstances: notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted).  In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier,[7] 477 U.S. at 488, 106 S.Ct. 2639).  Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied, 528 U.S. 934 (1999).

In Martinez, the Supreme Court modified the general rule in Coleman[8] to expand the "cause" that may excuse a procedural default.  Martinez, 132 S.Ct. at 1315.

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

[8] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, 132 S.Ct. 912, 922 (citing Coleman, 501 U.S. at 753).  The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent.  Coleman, 501 U.S. at 753-54.  In Coleman, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court.  Id. at 755.  However, the Martinez Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. <u>Cf</u>. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result.  The Eleventh Circuit

has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim.  "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default."  Carrier, 477 U.S. at
> 496, 106 S.Ct. at 2649.[9]  "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. Johnson v. Alabama, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must

'show that it is more likely than not that no reasonable juror

would have convicted him' of the underlying offense." Johnson v.

Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v.

Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002).

Additionally, "'[t]o be credible,' a claim of actual innocence must

be based on reliable evidence not presented at trial."  Calderson

v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at

324).  With the rarity of such evidence, in most cases, allegations

of actual innocence are ultimately summarily rejected.  Schlup, 513

U.S. at 324.

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[10] A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the

---

[10] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show  there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

> proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id</u>., at 687, 104
> S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted).  "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[11], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the <u>Strickland</u> standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933.  And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a

---

[11] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

15

> defendant has not satisfied that standard.
> See Yarborough v. Alvarado, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

Strickland, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Gulliver asserts that counsel were ineffective

because they failed to request that the trial court conduct a

competency hearing. Gulliver raised this ineffectiveness claim in

his Rule 3.850 motion, as ground five. See Resp. Ex. F at 122-23.

Identifying the two-prong Strickland ineffectiveness test as the

controlling law, the trial court denied the Rule 3.850 motion with

respect to this issue, stating that the claim is "clearly refuted

by the record." Resp. Ex. G at 221. Upon Gulliver's appeal, the

appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court

may have affirmed the denial of Gulliver's motion for post

conviction relief on the merits. If the appellate court addressed

16

the merits, Gulliver would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gulliver is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Gulliver's claim is still without merit because the trial court's conclusion is fully supported by the record. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. Coxe is an experienced criminal defense attorney.[12] The inquiry is "whether,

---

[12] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that

in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.   "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>Dingle v. Sec'y for Dept. of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007).   Gulliver has failed to carry this burden.

Given the record, in this case, counsels' performance was within the wide range of professionally competent assistance.   The following facts are pertinent to consideration of this claim. According to the progress docket for Gulliver's state criminal case

---

"[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246 (2000).   Henry Matson Coxe, III, was admitted to the Florida Bar in 1973.   <u>See</u> http://www.floridabar.org.   Thus, at the time of Petitioner's plea proceeding in 2007, Coxe had been practicing law for over thirty years and had been board certified in criminal trial work since 1988.   Michael Dennis Whalen, who was admitted to the Florida Bar in 1978, had almost thirty years of legal experience.   <u>See</u> http://www.floridabar.org.

(Case Number 16-2005-CF-015343-AXXX-MA), there was neither a competency hearing nor a court order declaring Gulliver incompetent. However, on October 30, 2006, the court appointed Dr. Ernest Miller, M.D., to examine Gulliver for competency. Resp. Ex. PD-1 at 6. On November 6, 2006, Dr. Miller wrote a letter to the Honorable Lance M. Day, opining that Gulliver was incompetent to proceed.

> This is to inform you that I have been in touch with the contact social worker at Baptist Medical Center who informs me that on this date Mr. Gulliver continues intubated and on [a] respirator. As such, in my opinion, he is currently incompetent to proceed. The contact person informed me that they would alert me should there be any significant change, and I will proceed accordingly.

P. Ex. I; Resp. Ex. PD-1 at 7. Subsequently, in a December 20, 2006 letter to Judge Day, Dr. Miller opined that Gulliver "at present merits adjudication of competence to proceed, within the parameters set forth in Florida Rules of Criminal Procedure 3.211." P. Ex. I, Letter, dated December 20, 2006, at 4. Dr. Miller stated, in pertinent part:

> Pursuant to your Order of October 30, 2006, a psychiatric evaluation was undertaken on the above captioned individual. Mr. Gulliver was seen in serial visits, the first of these November 10, 2006; the second on November 23, 2006; and the most proximal on December 20, 2006. The reasons for the serial visits were, as you know, related to his compromised medical condition as related to a self-ingested overdose of Benzodiazepine medication in accompaniment with beverage alcohol. Through that progression of time, he did show

19

substantial improvement and at no point prior to his most recent examination was he at a state approaching competence.   In the most recent examination, I informed him of my role and the purpose of my visit which was at the Duval Detention Facility, and that the examination was not of a confidential nature. He grasped this and agreed to proceed, nonetheless.   Subsequent to the evaluation, I had an opportunity to review the jail clinic record and these data form the basis now of the following narrative which is respectfully tendered:

     . . . .

He looks much better than on his previous occasions when examined at the Baptist Hospital South.   He is alert, lucid and goal directed in his speech.   His concentration and attention span are excellent.   He is well oriented to time, place and situation.   He is reasonably up to date on current events.   He is functioning in the high average intellectual range per RAIT [(Rapid Approximate Intelligence)] test. He registers, stores and retrieves data without difficulty. He can utilize verbal and mathematical abstractions.   At no time does he appear hallucinated nor acknowledge the same.   He has no difficulty in replicating a geometric design and completing and [sic] alphabet. No anti-sacchadic [sic] eye movements are identified.   His current state compares markedly with that of two previous visits, the first of these November 10, 2006 when he was in [a] stuporous state, suffering aspiration pneumonia and respiratory distress.   At that time[,] there was also evidence of renal impairment.  On the second visit, November 23, 2006, also at Baptist South, he was manifestly delirious, expressing to me the belief that he was to be featured in a new motion picture. The working diagnoses at that time was that he was in delirium, suffered an alcohol dependency and major depressive disorder.

     . . . .

Comment: Addressing the Court's specific
questions, it is my opinion that Mr. Gulliver
at present merits adjudication of competence
to proceed, within the parameters set forth in
Florida Rules of Criminal Procedure 3.211.  It
is my opinion that he has sufficient rational
as well as factual understanding of the
proceedings against him and is able to
adequately assist counsel.  More specifically:

1. His ability to appreciate the
charges and allegations is adequate.
He reports that he has now agreed to
plead to "two charges of DUI
manslaughter" and believes that they
have dropped the bodily injury
charges involving the third
person.[13]

2. His ability to appreciate the
range and nature of possible
penalties is adequate.  It is his
understanding that he could have
faced life imprisonment but with the
pleading successfully concluded that
it will be somewhere in the range of
five to ten or perhaps twenty years.

3. His ability to understand that he
is involved in an adversarial
process is adequate.  He identifies
the roles of court officers, the
purpose of a witness, the function
of evidence, the use of the Fifth
Amendment and the nature of an
appeal.  He identifies the presiding
jurist by name and understands that
he may be leaving the Circuit Court
at year's end.  He believes that he

---

[13] At the plea hearing, the prosecutor informed the court that
the State "ethically cannot proceed" as to count three (DUI
manslaughter causing serious bodily injury to victim Burnley)
because the "medical records do not reflect a permanent injury so
that the State could proceed under the serious bodily injury
provision under Florida law."   Plea Tr. at 305-06.

can have a fair trial. He
understands the pleading options
which were and are available to him.

4. His ability to adequately
disclose to counsel pertinent facts
is adequate. I did not press him to
go into details regarding the
accident per se, but he is able to
come forth with a description of
circumstances leading up to it,
i.e., whether or not he was wearing
seatbelts [sic] or the others were
restrained, whether the airbags
deployed, etc.

5. His ability to manifest
appropriate courtroom behavior is
adequate. He is pleasant, congenial
and cooperative. He is lucid and
restrained in manner.

6. His ability to testify relevantly
is adequate. Here again, there is
no indication of any emotional
problems or psychiatric condition
which would impede his ability to
respond to questions or, indeed,
pose same through his counsel.

Id. at 1, 4-5 (emphasis deleted).

On this record, trial counsel had no reason to doubt
Gulliver's competency. Gulliver's initial incompetency to proceed
was due to a self-inflicted overdose. When the effects of that
overdose were ameliorated, he showed "substantial improvement" over
time. P. Ex. I, Dr. Miller's December 20th Letter, at 1. Given
Gulliver's apparent suicide attempt on October 28, 2006, see Resp.
Ex. G at 258, the court agreed that he was not able to proceed to
trial at that time. Dr. Miller's letter, outlining the psychiatric

evaluations, and his final opinion that Gulliver was competent to proceed, was filed with the court on January 2, 2007. See Resp. Ex. PD-1 at 7. Thus, defense counsel would have been aware of Dr. Miller's letter as well as the details of the psychiatric evaluations.

On March 8, 2007, two months after the filing of Dr. Miller's report, Gulliver entered a guilty plea to two counts of DUI manslaughter. Nothing in the plea colloquy would have suggested to counsel that Gulliver's mental condition had declined to the extent that he would have been incompetent to proceed. Quite to the contrary, during the plea proceeding, Gulliver acknowledged that he was not under the influence of any drug or condition which might interfere with his ability to understand or appreciate the plea and its consequences. Plea Tr. at 293. He also acknowledged that he did not have any physical or mental defects that might prevent him from understanding the plea proceeding. Id. at 293-94. Familiar with Gulliver's history, the court inquired as to whether Gulliver was taking any medication for his mental health. Id. at 294. Gulliver responded that he was taking an equivalent of Paxil, as prescribed. Id. In an abundance of caution, the court also asked defense counsel if he was aware of any matters regarding Gulliver's mental health that would have a bearing on the plea. Id. at 294-95. Defense counsel answered: "there have been a number of circumstances that dealt with his mental health over the last

several months or since this event and prior, but none I know of that would interfere with his ability to understand and appreciate what he's doing today." Id. at 295. The State confirmed that there were no recent developments relating to Gulliver's mental health that would interfere with his ability to understand and appreciate the plea proceeding. Id. Interestingly, when the trial judge asked Gulliver whether he was satisfied with his attorneys' representation, he answered: "[v]ery much so, yes." Id. at 293.

Having satisfied itself that Gulliver was competent to proceed, the court then went on to question Gulliver regarding his understanding of the guilty plea. Based on Gulliver's answers, he fully understood the nature of the charges, the availability of possible defenses, the consequences of the guilty plea, and the minimum and maximum possible sentence. Id. at 295-302, 306-10. After a detailed and lengthy plea colloquy, the trial court accepted Gulliver's plea, found that there was a factual basis for the plea and that Gulliver entered the plea "freely and voluntarily" as to counts one and two with a full understanding of the nature of the charges, the consequences of the plea, and the minimum and maximum possible sentence. Id. at 337.

Even assuming arguendo deficient performance by defense counsel, Gulliver has not shown prejudice. Gulliver has not shown a "reasonable probability that, but for counsels' errors, he would not have pleaded guilty and would have insisted on going to trial."

Hill, 474 U.S. at 59.  At the plea hearing, Gulliver acknowledged that he pled guilty because he was in fact guilty of the charges. Plea Tr. at 281.  Additionally, the State's evidence against him was substantial.[14]  If Gulliver had proceeded to trial and a jury had found him guilty of two counts of DUI manslaughter, he faced the possibility of imprisonment for thirty years.[15]  At the plea hearing, Gulliver acknowledged that he understood the sentencing exposure if he proceeded to trial.  Id. at 282-83.  Therefore, his ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### B. Ground Two

As ground 2(a), Gulliver asserts that his plea was involuntary because, on December 20, 2006, he "had a clear misunderstanding" of the plea.  Petition at 13.  As ground 2(b), he states that counsel was ineffective because he failed to correct his misunderstanding of the plea until thirty minutes before the March 7, 2007 plea. Id.  Respondents assert that ground 2(a) is procedurally barred because the claim was not raised on direct appeal.  Response at 8. This Court agrees.  Ground 2(a) is procedurally barred since Gulliver failed to raise the claim in a procedurally correct manner.  Gulliver has not shown either cause excusing the default

---

[14] See Plea Tr. at 302-04 (State's recitation of the factual basis for the plea).

[15] See Plea Tr. at 282.

25

or actual prejudice resulting from the bar.   Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.  Therefore, the Court need not address the merits of ground 2(a).

With respect to ground 2(b), Gulliver raised this ineffectiveness claim in his Rule 3.850 motion, as ground six.  See Resp. Ex. F at 124-25.  Identifying the Strickland ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> During the plea hearing, the Defendant testified under oath that he was entering a plea because he was guilty.  (Exhibit "C") The Defendant's plea negotiation was set forth in full on the plea of guilty form (Exhibit "A") and in the plea dialogue with the Defendant (Exhibit "C")  This Court finds that the Defendant acknowledged his reasoning for entering the plea and understood the penalties he faced for his actions.  Further, he acknowledged that he was satisfied with his attorney, gave his attorney permission to enter the plea negotiation and that he understood he was giving up [the] right to challenge issues regarding guilt or innocence. In fact, he repeated for the judge the terms of the negotiated agreement.  He further was asked about his medication and mental health issues and testified he was taking his medication and his attorney addressed his mental health on the record with the judge.

Resp. Ex. G at 221.  The court concluded that the claim is "clearly refuted by the record."  Id.  On appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gulliver is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Gulliver's ineffectiveness claim is simply without merit. The trial court's conclusion is fully supported by the record. Upon review of the record, it appears that the court carefully ensured that no one had told Gulliver that he would receive a certain sentence if he pled guilty. Plea Tr. at 291-92. Gulliver acknowledged that he had reviewed the plea form extensively with his attorneys. Id. at 292. Nothing in the plea colloquy suggests that Gulliver misunderstood the plea. To the contrary, Gulliver correctly explained the potential imprisonment for both charges, and stated that he

understood the terms of the plea agreement that his attorneys had reviewed with him.

The United States Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Here, those representations combine with the fact that Dr. Miller, on December 20, 2006, reported that, although Gulliver believed his maximum sentence to be a term of life imprisonment, Gulliver understood that, by pleading guilty, the potential sentence would "be somewhere in the range of five to ten or perhaps twenty years." P. Ex. I, Dr. Miller's December 20th Letter, at 5. Ultimately, Gulliver's sentence was within the range he reported as his potential sentence, albeit at the high end. "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert. denied, 502 U.S. 835 (1991). Gulliver has failed to show that his plea was involuntarily entered. Thus, given the record, counsels'

performance was well within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Gulliver has not shown prejudice. He has not shown a "reasonable probability that, but for counsels' errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.   As previously stated, he acknowledged that he pled guilty because he was in fact guilty of the charges. Additionally, the State's evidence against him was substantial, and if he had proceeded to trial and a jury had found him guilty of two counts of DUI manslaughter, he faced the possibility of imprisonment for thirty years.   Gulliver understood the potential sentence if he proceeded to trial.   Thus, his ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### C. Ground Three

As ground three, Gulliver asserts that counsel were ineffective because they failed to raise the defense that the victim driver was the sole and proximate cause of the accident that resulted in the deaths of the victim driver as well as the backseat passenger in the other vehicle.  Gulliver raised this ineffectiveness claim in his Rule 3.850 motion, as ground one.  See Resp. Ex. F at 109-11.  After identifying the ineffectiveness test, the trial court denied the Rule 3.850 motion with respect to this

issue, stating that the claim is "clearly refuted by the record." Resp. Ex. G at 221.   On Gulliver's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Gulliver's motion for post conviction relief on the merits.   If the appellate court addressed the merits, Gulliver would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.   After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.   Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Gulliver is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.   The record before the Court fully supports the trial court's conclusion.   In the Amended Information, the State of Florida charged Gulliver with two counts of DUI manslaughter for the deaths of the Matthew Shaw, the driver of the other vehicle, and Christopher White, Shaw's

backseat passenger.  As to count one, the Amended Information
reads, in pertinent part:

> DANIEL J. GULLIVER on September 23, 2005,
> in the County of Duval and the State of
> Florida, did drive or was in actual physical
> control of a vehicle while under the influence
> of alcoholic beverages and/or any chemical
> substance set forth in Section 877.111 and/or
> any substance controlled under Chapter 893,
> while affected to the extent that his normal
> faculties were impaired, and/or did drive or
> was in actual physical control of a vehicle
> while having a blood alcohol level of 0.08 or
> more grams of alcohol per 100 milliliters of
> blood, and by reason of the operation of said
> vehicle, did cause or contributed to the cause
> of the death of MATTHEW SHAW, a human being,
> contrary to the provisions of Sections
> 316.193(1) and 316.193(3)3, Florida Statutes.

Resp. Ex. B, Amended Information.  As to count two, the Amended
Information used the same statutory terminology to charge Gulliver
with DUI manslaughter for causing or contributing to Christopher
White's cause of death.  Id.

In the Amended Information, the State of Florida charged
Gulliver with violations of Florida Statutes sections 316.193(1)
and 316.193(3)3.[16] Florida Statutes section 316.193(1) provides that
"[a] person is guilty of the offense of driving under the influence
and is subject to punishment . . . if the person is driving or in
actual physical control of a vehicle within this state and: (a)
[t]he person is under the influence of alcoholic beverages, any

---

[16] See Fla. Stat. § 316.193 (2005), effective July 1, 2004
through September 30, 2005.

chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; (b) [t]he person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood." Additionally, Florida Statutes section 316.193(3) states: "Any person: (a) [w]ho is in violation of subsection (1); (b) [w]ho operates a vehicle; and (c) [w]ho, by reason of such operation, causes or contributes to causing: . . . 3. [t]he death of any human being commits DUI manslaughter, and commits: a. [a] felony of the second degree . . . ."

Gulliver acknowledges the elements of the Florida Statutes section 316.193(3). Petition at 17. Nevertheless, he asserts that his version[17] of the accident supports his contention that "the reckless (and possibly impaired) driving of the victim driver (Mr. Matthew Shaw) was the sole and proximate cause of the accident that night." Id. at 18 (emphasis deleted). On the plea form, Gulliver declared that he was guilty of the charges and had been informed of the possible defenses to the charges. See Resp. Ex. B. Moreover, at the plea hearing, he acknowledged that counsel had reviewed the plea form with him and had answered his questions relating to the case and the possible defenses. Plea Tr. at 292-93. As previously stated, Gulliver acknowledged at the plea hearing that he was very satisfied with counsels' representation. Id. at 293. Additionally,

---

[17] See Petition and attached exhibits; Reply at 11.

Mr. Coxe emphasized that Mr. Whalen and Gulliver had reviewed the plea form "at length" and then both attorneys and Gulliver reviewed the form again.  Id. at 299-300.  Upon inquiry by the trial judge, Gulliver acknowledged that he had sufficient time to consider any possible defenses to the charges and reviewed those possibilities with counsel.  Id. at 300-01.

At the court's request, the prosecutor set forth the factual basis for the plea, stating:

> The State would be prepared to prove beyond a reasonable doubt that this defendant, Daniel Gulliver, as to Count 1 on September the 23rd, 2005, in Duval County, Florida, did drive or was in the actual physical control of a vehicle while under the influence of alcoholic beverages while affected to the extent that his normal faculties were impaired, or did drive that vehicle while having a blood alcohol level of .08 or more grams of alcohol per 100 milliliters of blood, and by reason of his operation of the said vehicle did cause or contribute to the cause of the death of Matthew Shaw, a human being, contrary to the provisions of Florida law.
>
> As to count 2, the State will be prepared to prove beyond a reasonable doubt that this defendant on that same date in Duval County did drive a vehicle while under the influence of alcoholic beverages while affected to the extent that his normal faculties were impaired, or did drive that vehicle while having a blood alcohol level of .08 or more grams of alcohol per 100 milliliters of blood, and by reason of the operation of his vehicle, did cause or contribute to the cause of the death of Christopher White, a human being, contrary to the provisions of Florida law.

Specifically, Your Honor, as I indicated, this crash did occur on September the 23rd of 2005.  It occurred at approximately 2:00 a.m.

. . . .

The victims in this case, Mr. Shaw and Mr. White, were in a vehicle along with a third individual, Mr. Burnley.

They were stopped at a light we believe on -- southbound on Philips Highway at the intersection of Philips and University at that time about 2:00 a.m.

This defendant was driving his vehicle a Jeep Cherokee.  He had left the Caesar's Gentlemen's Club.  He rear ended the victim's vehicle which was driven by Mr. Shaw, killing Mr. Shaw and Mr. White.

The defendant's blood was drawn at approximately 3:23 a.m., analysis by FDLE show that the results were .23.  The crash reconstruction was done by Corporal Davis with the Highway Patrol based primarily on the crush damage.  He indicated that he believed the defendant's speed was between 45 and 51 miles per hour.  The speed limit there was 45, so the speed was not considered to be a significant factor here.

Id. at 302-04.  Defense counsel did not dispute that the State had

set forth a sufficient factual basis for the court's acceptance of

the plea.  Id. at 304.

Given the factual basis for the plea and the State's evidence

against Gulliver (that the victim's car was stopped at a red light;

Gulliver's blood alcohol level was .23; and Gulliver rear ended the

victim's vehicle), counsels' performance was not deficient.  Under

the statute, the State would have been required to prove that

34

Gulliver's operation of his vehicle caused or contributed to causing the victims' deaths. The statute does not provide that the operator of the vehicle must be the sole cause of the fatal accident. See Magaw v. State, 537 So.2d 564, 567 (Fla. 1989) ("Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice."). Despite Gulliver's belated assertion that the victim driver was the sole and proximate cause of the accident due to his reckless driving, counsels' representation was within the wide range of reasonable professional assistance. There was no legal basis for a "sole and proximate cause" defense. See Smallridge v. State, 904 So.2d 601, 603-04 (Fla. 1st DCA 2005) (per curiam) (citing Magaw, 537 So.2d at 567), rev. denied, 918 So.2d 293, cert. denied, 547 U.S. 1193 (2006).

Even assuming arguendo deficient performance by defense counsel, Gulliver has not shown resulting prejudice. He has not shown a "reasonable probability that, but for counsels' errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Therefore, Gulliver's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## D. Ground Four

As ground four, Gulliver claims that counsel were ineffective because they failed to move to suppress the results of the blood-

alcohol test.   In this regard, Gulliver describes six major violations of law:  (1) the blood collection violated voluntary and implied consent rules in that Gulliver was in no condition to give voluntary consent, as evidenced by his "shaky" signature on the form and the investigating officer's failure to check the appropriate line on the form in section four, titled Check Off List, see P. Ex. K, Blood Collection Form; (2) the blood collection violated statutory certification requirements in that the form certifies that the registered nurse withdrew the blood from the "FHP" rather than the subject Gulliver, see id., section three; (3) there was no control number placed on the kit before it was put in the evidence room, see id., section four; (4) the blood sample was not properly labeled in that it was missing the "[d]ate and time of sample tested" and the initials of the person collecting the sample, as required by Florida Administrative Code Rule 11d-8.012, see Petition at 22; P. Exs. L; M; (5) there is no evidence that the blood was refrigerated prior to arrival at the FDLE Orlando laboratories, four days after the draw, see P. Exs. N; O; and (6) the official FDLE chain of custody worksheet, see P. Ex. O, does not mention any October 28th blood test, see P. Ex. P.

Gulliver raised this ineffectiveness claim in his Rule 3.850 motion, as ground three.  See Resp. Ex. F at 117-21.  After citing Strickland as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating that the claim is

36

"clearly refuted by the record." Resp. Ex. G at 221. Upon Gulliver's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Gulliver's motion for post conviction relief on the merits. If the appellate court addressed the merits, Gulliver would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gulliver is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, this Court determines that Gulliver's claim is still without merit. Indeed, the trial court's conclusion is fully supported by the record. Florida Administrative Code Rule 11D-8.012(4), titled, "Blood Samples - Labeling and Collection" provides that blood collection tubes must be labeled with the

following information:  name of person tested, date and time sample was collected, and initials of the person who collected the sample. Nevertheless, Rule 11D-8.012(7) states: "Notwithstanding any requirements in Chapter 11D-8, F.A.C., any blood analysis results obtained, if proved to be reliable, shall be acceptable as a valid blood alcohol level."  The rule also provides: "Blood samples need not be refrigerated if submitted for analysis within seven days of collection, or during transportation, examination or analysis. Blood samples must be otherwise refrigerated, except that refrigeration is not required subsequent to the initial analysis." F.A.C. 11D-8.012(5).  Thus, upon review of the record, Gulliver's reference to the Florida Administrative Code would not provide a basis for exclusion of the blood test results.[18]

Moreover, given the instant record and the investigating officer's compliance with Florida Statutes section 316.1933(1)(a) ("If a law enforcement officer has probable cause to believe that a motor vehicle driven by . . . a person under the influence of alcoholic beverages . . . has caused the death or serious bodily

---

[18] See P. Exs. K, Blood Collection Form (showing Petitioner's name and date of birth, the date and time of the incident (September 23, 2005, at 2:20 a.m.), the FHP case number, the location of the blood draw, the date and time of the blood draw, the person drawing the blood (Nurse Teresa L. Calvert), the area of the body where the blood was drawn, and the probable cause for the blood draw ("fatal crash") as well as the certification for the blood withdrawal and the consent section reflecting Petitioner's name, the date and time of consent (September 23, 2005, at 3:07 a.m.), and the investigating officer's signature); O, Chain of Custody Worksheet.

injury of a human being, a law enforcement officer shall require the person driving or in actual physical control of the motor vehicle to submit to a test of the person's blood for the purpose of determining the alcoholic content thereof . . . ."), counsels' representation was within the wide range of reasonable professional assistance. There was sufficient evidence to establish probable cause for the blood draw without Gulliver's consent, and thus, any motion to suppress would have been meritless. Gulliver's ineffectiveness claim without merit since he has shown neither deficient performance nor resulting prejudice.

### E. Ground Five

As ground five, Gulliver contends that the State had insufficient evidence to convict and did not adequately investigate; he was denied the right to confront the witnesses against him and to call his own witnesses; the State violated <u>Brady</u> by destroying the vehicles involved in the accident so that his expert could not challenge the findings; and the FHP report conflicts with other evidence. Respondents assert that ground five is procedurally barred because the claim was not raised on direct appeal. Response at 17. This Court agrees that this ground is procedurally barred because Gulliver failed to raise the claim in a procedurally correct manner. Gulliver has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the

application of the fundamental miscarriage of justice exception. Therefore, the Court need not address the merits of ground five. Alternatively, even assuming that this claim is not procedurally barred, his plea of guilty operated as a waiver of all nonjurisdictional defects in the criminal proceeding. See United States v. Marshall, 453 Fed.Appx. 911, 913 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter); United States v. Socorro, 447 Fed.Appx. 921 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter).

## F. Ground Six

As ground six, Petitioner claims that counsel were ineffective because they failed to: adequately investigate, present substantial mitigating evidence, interview key witnesses who would have provided favorable testimony, and move to suppress the blood evidence. Gulliver raised this ineffectiveness claim in his Rule 3.850 motion, as ground seven. See Resp. Ex. F at 125-26. After citing Strickland as the controlling standard for reviewing ineffectiveness claims, the trial court denied the Rule 3.850 motion with respect to the claim, concluding that the record refutes Gulliver's claim and noting that defense counsel presented an "extensive and exhaustive" mitigation packet. Resp. Ex. G at 221. Upon Gulliver's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gulliver is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Gulliver's ineffectiveness claim is still without merit because the trial court's conclusion is fully supported by the record. Although Gulliver asserts that counsel "could have produced" support for his version of the facts surrounding the accident, see Petition at 35, for the reasons previously explained, given the record, counsels' performance was well within the range of professionally competent assistance. Gulliver has failed to carry his burden of showing that no competent attorney would have taken the action that counsel, here, chose.

41

Nothing in the record indicates that counsel, at the time of the plea, were not aware of what Gulliver refers to as "conflicting evidence" relating to the victim driver, not Gulliver, causing the accident. As previously stated, the State set forth the factual basis for the guilty plea, and defense counsel, in the presence of Gulliver, acknowledged that it constituted a sufficient factual basis for the court's acceptance of Gulliver's guilty plea. Plea Tr. at 305. At the plea hearing, Gulliver acknowledged that he understood that, by entering a guilty plea to the charges, he would waive certain constitutional rights (specifically, the right to a trial before a judge or a jury, the right to require the State to prove the charges against him beyond a reasonable doubt, the right to compel the attendance of witnesses on his behalf, and the right to confront and cross-examine the witnesses against him). Id. at 284. Moreover, as the post-conviction court stated, defense counsel presented "an extensive and exhaustive" mitigation packet, which included numerous letters from Petitioner's friends, relatives, and coworkers. Resp. Ex. G at 221, 253-73. As to counsels' alleged failure to interview key witnesses, Petitioner has failed to show any deficient performance on counsels' part.[19]

---

[19] As previously stated, the accident resulting in the deaths of Matthew Shaw and Christopher White occurred on September 23, 2005, and Mr. Coxe represented Petitioner at the November 15, 2005 arraignment. See PD-1 at 3. The docket reflects that depositions were taken and a motion for production of favorable evidence was filed. Id. at 3-5.

Additionally, as to counsels' alleged failure to move to suppress the blood-alcohol test results, that claim was previously rejected as part of ground four.   Therefore, Gulliver's ineffectiveness claim without merit since he has shown neither deficient performance nor resulting prejudice.

### G. Ground Seven

As ground seven, Gulliver claims that counsel (Henry Matson Coxe, III) was ineffective because he delivered a plea agreement that was "facially harmful" and conceded Gulliver's guilt without Gulliver's express consent and that Mr. Coxe was "virtually unavailable" to him throughout the pretrial period and assigned another attorney within the law firm (Michael Whalen) to handle Gulliver's criminal case as well as his civil case.   Petition at 38-39.   Gulliver acknowledges that he saw Mr. Coxe on court dates and conversed prior to those court appearances.   Id. at 39.   He states that the "end result was the lack of any quality attention" given to his case and that the "lack of preparation was the direct cause of the Petitioner being coerced into a plea agreement by an uninformed Defense Counsel."   Id.   Gulliver concludes that "[n]o competent person would accept a plea calling for 5-30[20] years+

_____

[20] See Resp. Ex. B, Plea of Guilty and Negotiated Sentence (stating that Petitioner's sentence for count one would be a term of imprisonment between five and fifteen years and that his sentence for count two would be a term of imprisonment between probation and five years); Plea Tr. at 286, 295-96 (Petitioner's acknowledging his understanding and correctly reciting the sentencing range exposure if the Court accepted his guilty plea to

when his option for going to trial was 0-30 years." Id. Gulliver raised this ineffectiveness claim in his Rule 3.850 motion, as ground eight. See Resp. Ex. F at 127-28. Citing Strickland, the trial court denied the Rule 3.850 motion with respect to this issue, stating that the claim is "clearly refuted by the record." Resp. Ex. G at 221. Gulliver appealed, and the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Gulliver's motion for post conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Gulliver is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference

---

the charges).

under AEDPA, Gulliver's claim is still without merit.  The trial
court's conclusion is fully supported by the record.  Defense
counsel had a duty to convey the State's offer.  See Missouri v.
Frye, 132 S.Ct. 1399 (2012).  Counsel did not concede Gulliver's
guilt by communicating the State's plea offer to him.  As
previously set forth, the trial court reviewed the terms of the
plea agreement with Gulliver, and Gulliver agreed that he
understood the terms and consequences.  See Plea Tr.  Moreover,
Gulliver stated that he was very satisfied with counsel and that he
had not been coerced into pleading guilty.  Id. at 291, 293.  In
sum, Gulliver conceded his own guilt, see id. at 281, and Mr.
Coxe's performance was not deficient.  Therefore, Gulliver's
ineffectiveness claim without merit since he has shown neither
deficient performance nor resulting prejudice.

## H. Ground Eight

As ground eight, Gulliver asserts that his sentence is illegal
due to errors in his guidelines scoresheet and that counsel were
ineffective when they used the incorrect scoresheet as they advised
Petitioner to accept the State's plea offer.  See Petition at 42-
44.  In the Reply, Petitioner, through counsel states:

> Notwithstanding Respondents' erroneous
> arguments, undersigned counsel has conducted
> further investigation of the facts underlying
> this claim, and has determined that Petitioner
> would not be entitled to relief on the merits
> of this claim.  Accordingly, in the interest
> of judicial economy, undersigned counsel

withdraws the claims set forth in Ground Eight
of the Petition.

See Reply at 19-20 n.8. Gulliver's request to withdraw ground eight
will be granted.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Gulliver seeks issuance of a certificate of appealability,
the undersigned opines that a certificate of appealability is not
warranted.  This Court should issue a certificate of appealability
only if the petitioner makes "a substantial showing of the denial
of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this
substantial showing, Gulliver "must demonstrate that reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong," Tennard v. Dretke, 542
U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484
(2000)), or that "the issues presented were 'adequate to deserve
encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S.
322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893
n.4 (1983)).

Where a district court has rejected a petitioner's
constitutional claims on the merits, the petitioner must
demonstrate that reasonable jurists would find the district court's
assessment of the constitutional claims debatable or wrong.  See
Slack, 529 U.S. at 484.  However, when the district court has
rejected a claim on procedural grounds, the petitioner must show

46

that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioner's request to withdraw ground eight[21] is **GRANTED.**

2.   Petitioner's Renewed Request for an Evidentiary Hearing (Doc. #23) is **DENIED.**

3.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

4.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

5.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[21] See Reply (Doc. #23), filed December 30, 2010, at 19-20 n.8.

6.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of January, 2013.

MARCIA MORALES HOWARD
United States District Judge

sc 11/8
c:
Counsel of Record